No. 19,410.

THE GEO. O. RICHARDSON MACHINERY COMPANY, *Appellant*, v. C. N. BROWN, *Appellee*.

SYLLABUS BY THE COURT.

1. SALE—*Threshing Machine—Warranty Made to Third Party—Liability of Vendor.* The seller of an article may be liable upon a warranty of its quality made to another than the purchaser, who is interested in it, and who becomes a surety for the payment of a part of the purchase price.

2. SAME—*Elements of Damage Recoverable.* Where the agent of the company selling a threshing machine warrants to a farmer that it will do good work, and thereby induces him to give his note to the buyer in order that it may be at once endorsed to the company as security for the purchase price,

the maker of the note may recover against the company any damages resulting to him from the defective working of the machine, amounting to a breach of warranty, while in use by the buyer in threshing his grain. His remedy is not limited to defeating the payment of the note.

3. SAME—*Using Machine after Discovering Defects—Not Precluded from Recovery.* It can not be said as a matter of law that one who permits a defective machine to be used for a week in threshing his wheat is thereby precluded from recovering, under a warranty of its work, all damages resulting during that time from its defective operation, where efforts were continually made to improve its condition, and where on the third day from the last the warrantor made some repairs, resulting in a good effect, which proved only temporary.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed June 12, 1915. Affirmed.

*R. R. Vermilion, Earle W. Evans,* and *Joseph G. Carey,* all of Wichita, for the appellant.

*Fred Stanley, Claude C. Stanley, Benjamin F. Hegler, E. L. Foulke, C. A. Matson,* and *J. D. Wall,* all of Wichita, for the appellee.

The opinion of the court was delivered by.

MASON, J.: The Geo. O. Richardson Machinery Company sold a threshing machine to Carl Harrison, taking as security a number of notes given to Harrison by farmers in consideration of threshing to be done by him. The company sued C. N. Brown, the maker, upon one of these notes. He filed an answer alleging that the note was given to Harrison in order that it might be endorsed to the company as collateral security; that to induce Brown to give the note the company guaranteed him that the machine was in good condition and would do good work; that Brown gave the note by reason of the warranty; that in fact the machine was defective, and by reason of its defects Brown, whose wheat was threshed by it, suffered a loss of over $600.

Brown recovered a judgment for $416.58, and the plaintiff appeals.

The case is unusual, in that the counterclaim amounts to an action upon a warranty of the quality of a machine, given, not to its buyer, but to one who had arranged with the buyer for its use, and who assisted the buyer in the purchase by giving his note to be used as security for the price. Unusual as the circumstances are, no reason is apparent why a warranty so given and relied upon may not be the basis of a claim for whatever damages result from its breach.

.The threshing machine was a second-hand one, not manufactured by the plaintiff. It was sold to Harrison under a written contract, and no warranty whatever was given him concerning it. In fact the agreement expressly excluded a warranty. Brown is not simply resisting the payment of the note on the ground that its consideration as between himself and Harrison has failed, and that it is open to the same defense in the hands of the company because it is not an innocent holder. His relief would of course be confined to defeating its payment, if that were the theory. He is asking compensation for losses he has suffered by reason of the machine not turning out to be as warranted. His evidence tended to show these facts: The company desired to sell the machine to Harrison, but was unwilling to do so without security, which he was unable to give. Therefore the company, through its agent, solicited a number of wheat raisers to arrange with Harrison to do their threshing, giving him their notes in part payment, in order that these might be at once endorsed over to the company as collateral security for the purchase price. Brown, among others, was approached in this way, but at first refused to have anything to do with the matter because of a doubt as to the efficiency of the machine. The agent then, in order to secure his coöperation, assured him that the machine was in good condition and would do good work, and in

so many words guaranteed that such was the case. Relying upon this guaranty or warranty, Brown signed the note, on one of the company's blanks, and Harrison endorsed it, leaving it in the hands of the agent. Harrison used the machine in threshing Brown's wheat, but by reason of its defects a large quantity of grain was wasted.

Two cases are cited as having some points of similarity. They are quite different, however, in their facts and in the principles involved. In one a farmer gave his note to a machine company as security, in sole consideration of the buyer's agreement to thresh his grain. The buyer failed to do this, and it was held that his default was not available to the maker of the note as a defense against the company. (*Terwilliger Ad'm. v. Richardson Machine Co.*, 15 Okla. 664, 83 Pac. 715.) In the other the company induced a number of farmers to give their notes to the buyer of a machine, to be endorsed to the company as collateral security for the price, upon a promise given by the company that the buyer would thresh their grain; he failed to do so, and it was held that the company could not recover on the notes. (*Aultman v. Knoll*, 71 Kan. 109, 79 Pac. 1074.) In neither was any warranty of the machine involved. There is no contention in the present case that the company undertook that Harrison should thresh the defendant's wheat, or that it is liable for any fault of Harrison's.

Assuming the facts to be as asserted by Brown, he gave his note upon the strength of the company's guaranty to him that the machine would do good work; he had a right to rely on this warranty, and if he suffered in consequence of its breach he should be compensated for his full loss, for which the mere defeat of the note might be an inadequate remedy. Whether the language of the company's agent, undertaking to guaranty the quality of the machine, was intended and understood as a warranty to Brown of its condition

Machinery Co. v. Brown.

was left to the jury, and the verdict must be treated as establishing the fact.  It was of course competent for the company to bind itself to such an agreement, upon sufficient consideration—to undertake that the machine should prove equal to the representations made, to insure any one interested against its failure to do so. Brown was not the purchaser of the machine, but he was not a stranger to the transaction.  He was at the solicitation of the company in effect furnishing a part of the purchase price, and looking to the use of the machine for reimbursement.  He was acquiring no title to the machine, but he contemplated its use, and it was a very important matter to him whether it was efficient or otherwise.  His interest was somewhat similar in quality to one hiring a machine, and it can hardly be doubted that a lessee of personal property might recover damages for a breach of warranty of its quality.  We conclude that there was no error in permitting a recovery of whatever damages naturally followed from any defect in the machine.

It is contended, however, that Brown's conduct precluded the allowance of the full amount fixed by the verdict, because upon his own statement he continued the use of the machine after learning of its defects. According to the evidence, the threshing of the wheat lasted from Monday noon until Saturday noon.  The machine worked badly from the first.  On Tuesday Brown tried to reach the company's agent by telephone, but not succeeding in finding him, left word at his office that the machine was not working, and that he wanted him to come out.  On Wednesday afternoon he stopped the machine.  On Thursday he telephoned the agent that he had done so, and he answered that he would be right out.  He came, bringing with him a machinist.  Some changes were made, resulting in an improvement, which, however, proved temporary. Brown did not after Thursday make a request of the agent for further repairs.  Harrison, however, con-

44—95 Kan.

tinually made efforts to fix the machine, stopping it some twenty times every day, and "tinkering" with it. In view of the expense and inconvenience that would have resulted from a suspension of work, and of the possible difficulty in making new arrangements for threshing the wheat, it can not be said as a matter of law that Brown omitted any duty tô the company in permitting the operations to continue through the week.

The instructions are complained of, but we think they fairly presented the issues. It is strongly urged that the verdict is so opposed to the weight of the evidence as to be obviously unjust and unreasonable. We do not find, however, that it is so without support as to justify this court in setting it aside.

The judgment is affirmed.