### FIRST NAT. BANK OF TULSA v. BOXLEY.

No. 17473—Opinion Filed April 12, 1927.

Rehearing Denied Oct. 18, 1927.

Application to File Second Petition for Rehearing Withdrawn Feb. 14, 1928.

(Syllabus.)

1. **Bills and Notes—Consideration for Note —Detriment to Payee and Benefit to Third Party.**

Where a benefit is conferred on a third party and a detriment is suffered by the payee of a note at the instance of the maker thereof, it will be sufficient consideration

to support the note, even though the maker thereof received no personal benefit by reason of the execution and delivery thereof.

### 2. Same—Note Made to Bank for Accommodation for Third Party Borrowing.

Where a bank desires to make an additional loan to a customer, but cannot do so because it has already loaned him as much as the law permits, and for that reason induces another person to give his note for the amount, promising to hold him harmless in the matter, in legal contemplation the borrower, who receives the money, and not the bank, which pays it out, is the party for whose accommodation the note is signed.

### 3. Same—Defense that Note Given Upon Oral Agreement not to Hold Maker Liable—Parol Evidence Rule.

The maker of a note cannot defend an action thereon by showing an oral agreement made at the time of its execution that he should not be held liable, for the reason that this would violate the rule forbidding the contradiction of the terms of a written instrument by parol evidence.

### 4. Same—Estoppel of Maker to Deny Liability on Note Designed to Appear to Bank Examiner as Asset of Bank.

The maker of a note cannot defend an action thereon by showing that it was executed without benefit to him, under an agreement exempting him from liability, in order to enable the bank to which it was payable to make an additional loan to a customer who had already borrowed to the limit allowed by law, for the reason that, having voluntarily signed the note in order that the examiner might believe it to be an asset of the bank, he ought not to be permitted to deny it that effect.

Error from District Court, Hughes County; George C. Crump, Judge.

Action by the First National Bank of Tulsa against J. D. Boxley. Judgment for defendant, and plaintiff appeals. Reversed.

Poe & Lundy, Orr & Woodford, and Pryor, Stokes & Carver, for plaintiff in error.

Anglin & Stevenson, Forrest M. Darrough, and Warren, Miller & Crutcher, for defendant in error.

MASON, V. C. J. The First National Bank of Tulsa, as plaintiff, brought suit against J. D. Boxley, as defendant, to recover the sum of $20,000, with interest and attorney's fee, upon a promissory note made, executed, and delivered by said defendant to the plaintiff. The defendant filed answer and supplemental answer, in which he admitted the execution of the note, but pleaded facts upon which he relied to relieve him from liability. Trial of the issues thus raised resulted in a verdict for the defendant, upon which judgment was entered, and to review which the bank has appealed.

It is first urged that the answer and supplemental answer fail to state facts sufficient to constitute a defense to the cause of action pleaded in plaintiff's petition, and that the trial court erred in overruling p.aintiff's demurrer thereto and in overruling plaintiff's objection to the introduction of any testimony thereunder.

The original answer of the defendant. in substance, is as follows: That the note was made for the benefit of the Gilliland Oil Company and that the defendant received no benefit therefrom; that it was agreed by and between the plaintiff, said oil company, and the defendant, and said note was accepted by the plaintiff with the understanding, that it was to be paid by the Gilliland Oil Company and was not to be paid by the defendant; that subsequent thereto receivers were appointed for the Gilliland Oil Company by the United States District Court, and that under the authority of said court said receivers notified the creditors of the Gilliland Oil Company to file their claims with said receivers on or before a certain date, or that said claims would be barred; that the plaintiff in due time filed its claim with said receivers for $142,500, which included the note sued on herein; that subsequently the bank entered into a compromise with said receivers, which was approved by said court and became final. whereby the receivers paid said plaintiff $122,500 and the claim represented by the note sued on herein was disallowed; that the Gilliland Oil Company was discharged from all obligations to said plaintiff; that the defendant was not notified and had no knowledge of said settlement until long after the date for filing claims against said company; that said defendant was only a surety on the note sued on and the Gilliland Oil Company was principal; that the release of the principal by operation of law automatically released the defendant from all obligation to pay said note; that the plaintiff is estopped from recovering on said note by reason of said settlement.

The pertinent part of the amendment to the original answer of defendant is as follows:

"That in addition to the allegations hereinbefore set out as to the nature of the indebtedness and the manner of its creation, that this defendant never received any consideration for the execution of said note, but that the said note was executed, together

with a number of other notes in this manner, to wit: That the said John W. Gilliland, the Gilliland Oil Company, and the Gilliland Oil &| Gas Company were customers of the plaintiff, the First National Bank of Tulsa, Okla.; that the limit of the amount of the indebtedness which the said plaintiff, the First National Bank of Tulsa. was permitted to make to any one customer at the time of the execution of this note was approximately the sum of $50,000; that the said John W. Gilliland and the Gilliland Oil Company at the time had an existing indebtedness with the First National Bank of Tulsa in the full amount which it was permitted by law to carry for them; that the account of John W. Gilliland and the Gilliland Oil Company was a very valuable and profitable account with the First National Bank of Tulsa and it was desirous of keeping said account and permitting the said Gilliland Oil Company and John W. Gilliland to borrow further sums than that permitted by law, but in order to carry such sums it was necessary that the said indebtedness be carried in another name in order to deceive the bank examiner and lead him into believing that the indebtedness was not the indebtedness of John W. Gilliland or the Gilliland Oil Company, but the indebtedness of other persons; that in furtherance of this desire the said First National Bank communicated these facts to John W. Gilliland and procured him to secure other persons to carry the excess indebtedness in their names, and pursuant to the instructions and request of said First National Bank of Tulsa, the said John W. Gilliland, acting for himself and the Gilliland Oil Company, did procure this defendant, R. |W. Widner, the Southwest Oil Company, and various other persons to sign notes with the knowledge and by the procurement and for the accommodation of the First National Bank of Tulsa in order to assist it in deceiving the National Bank Examiner and to permit it to carry the excess indebtedness as herein set out above that amount permitted by law. And in order to cause the records of the said bank to show that the indebtedness of the Gilliland Oil Company and John W. Gilliland did not exceed the amount the said bank was permitted to lend to one customer under the law, that the said bank through its agents represented to this defendant, and to the other persons who signed said notes, that if he would sign a note to the plaintiff bank, being the note herein sued upon, that they would carry the same as an asset of said bank and that the excess loan made by the said bank to the said John W. Gilliland and the Gilliland Oil Company would not appear on the books of the said bank as an excess loan and the said note to be carried by the said bank as an asset, but that the said bank would not look to this defendant for the payment of said note; but would collect the same from the said Gilliland Oil

Company; that in furtherance of this situation it was agreed between the said bank and this defendant that this defendant would not be bound by said note, but was simply making the same for the accommodation of the First National Bank of Tulsa, and that the said note would not be the obligation of this defendant. That under said circumstances above described and by reason of such representations this defendant herein executed said note; that no consideration whatever passed from said bank to this defendant for the execution of said note; that the defendant is not indebted to said bank in any sum."

The defendant, having admitted the execution and delivery of said note, assumed the burden of establishing a defense thereto, and if said answer and supplemental answer failed to state a defense, the trial court should have sustained the plaintiff's demurrer thereto. Does said answer and supplemental answer, admitting the allegations therein contained to be true, fail to state a defense to the plaintiff's cause of action?

The defenses. as alleged, may be summarized as follows:

(1) Failure of consideration.

(2) That the note sued on was the obligation of the Gilliland Oil Company and not the obligation of the defendant.

(3) That the Gilliland Oil Company was the principal and the primary obligor and that the defendant was surety and only secondarily liable thereon. That by reason of said settlement between the bank and the receivers of the Gilliland Oil Company, by which the company was released from all obligations to the plaintiff, the defendant, being merely a surety on said note, was thereby released from liability thereon.

(4) That the Gilliland Oil Company had already borrowed from the plaintiff bank up to the legal limit that the bank was authorized by law to loan to one customer and that the note sued on was requested by the the bank for its own accommodation so that it could loan to the Gilliland Oil Company an amount in excess of said legal limit and use the note of the defendant to deceive the bank examiner.

The fact that the defendant, as maker of the note, received no benefit from the transaction did not constitute a defense. The loan made by the bank to the Gilliland Oil Company was a sufficient consideration. Doxy v. Exchange Bank of Perry, 19 Okla. 183, 92 Pac. 150; 8 C. J. 214.

Although the defendant in his amended

answer alleges that he was not to be bound by said note, but "was simply making the same for the accommodation of the First National Bank." the facts set out disclose that, in legal contemplation, the Gilliland Oil Company was the party accommodated.

8 Corpus Juris, 254, states the rule as follows:

"The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact. And the fact that one derives some incidental benefit from the paper will not make it accommodation paper as to him."

The foregoing text cites the case of Thom v. Kibbee, 62 N. J. L. 753, 42 Atl. 729. where the court said:

"The accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned, not a third person who may receive an advantage by the loan of the credit."

It is apparent from the allegations of defendant's answer that the note was not executed to enable the bank to obtain money from some one else, but to enable the Gilliland Oil Company to obtain money from the bank. The defendant's credit was loaned, not to the plaintiff bank, but to the oil company; the effect of the transaction being to enable said company to borrow upon the credit of the defendant after the credit which the bank, under the law, could extend to said company had been exhausted.

The allegations that the account of the Gilliland Oil Company was a valuable account and that at the time of the creation of the indebtedness sued on herein the company had an existing indebtedness with said bank for the full amount which it was permitted by law to carry. and that the defendant signed said note pursuant to the instructions and request of and for the accommodation of the plaintiff bank do not affect the legal relation of the parties.

The situation is entirely different from that in the cases wherein it is held that a bank is bound to protect the maker of a note executed to it, for its accommodation, the proceeds of which it retains. There is no allegation in the defendant's answer in the instant case that the proceeds of said note were retained by the bank, but, on the contrary, it is alleged that the money was loaned to the Gilliland Oil Company upon the strength of the note signed by the defendant and without which the loan could

not have been made. The allegation that the bank through its agents agreed that the defendant would not be bound by said note does not alter the fact that the bank furnished a consideration for the note.

By the weight of authority, an executive officer of a bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it.

In Elling v. Bank of Jefferson, 114 Okla. 147, 244 Pac. 793, this court, in an opinion by Mr. Justice Riley. held:

"Where a cashier of a bank represents to persons executing promissory accommodation notes that the bank will loan money to a third party and the payors of the notes will not be called upon to pay the same, in the absence of a showing of specific authority vested in the cashier to make such representations, such representations constitute no defense to an action by the bank on the notes."

See, also, note, 28 L. R. A. (N. S.) 501.

A bank, of course, could not accept the fruits of a contract made for it and at the same time reject any burdens assumed on the ground that they were unauthorized.

The defendant's allegation of an oral agreement that he was not to be held to the payment of the note constituted no defense and would not be enforceable because it was in direct conflict with the terms of the written instrument, which could not be contradicted in this manner.

Furthermore, the allegation of an agreement between the bank. the defendant, and the Gilliland Oil Company that said company alone should be liable for the payment of said note fails to constitute a defense upon other grounds. We take knowledge of the federal statutes which limit the amount a national bank can loan to any one person, and the defendant herein pleads that the plaintiff had reached this limit in making loans to the Gilliland Oil Company and that he executed the note sued on in order to deceive the bank examiner and permit the plaintiff to loan more money to said company.

To permit the contractual relations of the parties to be controlled by such agreement would be to countenance and give effect to a secret arrangement entered into for the purpose of evading said law.

In Pauly v. O'Brien. 69 Fed. 460, the maker of a note sought to escape liability by showing that it was given in renewal of one he had executed to a bank, to take the place

of a matured note of one Naylor, at the request of the president, who told him that the Naylor note was secured by sufficient jewelry to pay it, but that he desired to get it "out of the past-due notes" and would carry it as collateral to the note of the defendant. In passing on this question, the court said:

"It thus appears that the defendant executed his first note, subsequently renewing it from time to time, and ultimately by the note in suit, for the purpose of having it take the place of the Naylor note, which, together with the collaterals, 'were to be collateral to the note' given by him. If, however, this was not really the case, but that, in truth, the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same, for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act."

The public is greatly interested in the management, control, and regulation of the banking business; banks are permitted to do business through the courtesy and permission of law and subject to its provisions for the protection of the depositors, creditors, and stockholders. Public faith and credit and honesty in business transactions are the main assets of a bank. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from the apparent assets and securities would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction, the object of which is to give to the assets of a bank favorable appearance for the purposes of examination, but less favorable for the purposes of liability or enforcement. The defendant having signed said note, and it being a part of the bank's assets, an understanding or agreement of nonliability would be neither proper nor tenable. It would amount to a fraud upon the depositors, stockholders, and the public to permit an agreement that the obligation which the defendant assumed was, in fact, not an obligation. We must conclude that under the defendant's allegations the note sued on became a part of the assets of the bank, and the allegations of the agreement just considered did not constitute a defense of the plaintiff's cause of action.

We are not unmindful of the cases which hold that a defense to a note is established by showing that it was given to a bank, which parted with nothing on the strength of it, merely to enable an officer to deceive the examiner, but the present case is distinguishable from those cases on the ground, already stated, that in the case at bar there was a consideration for the note.

The correct rule seems to be that where there is no want of a valid consideration, and the note was not, in legal contemplation, given for the accommodation of the bank, the maker cannot defeat its payment by showing that with his knowledge it was intended to mislead the bank examiner as to the bank's condition and securities.

The allegations of the defendant's answer that the Gilliland Oil Company was principal and that the defendant was merely a surety, and was, therefore, released from liability by reason of the agreement whereby the bank released all obligation of the oil company, does not, in our opinion, constitute a defense. The note was not signed by the Gilliland Oil Company, and we fail to see how the relationship of principal and surety could exist.

A contract of suretyship is an accessory agreement, by which one person binds himself for another already bound. It has been defined by statute as a contract "whereby one obligates himself to pay the debt of another, in consideration of credit or indulgence or other benefit to his principal, the principal remaining bound therefor." It is in the nature of a collateral engagement to pay the debt of another or to see that another pays or performs, as distinguished from an original and direct agreement for the party's own act, and is accessory to the principal obligation contracted by another person, either contemporaneously, or previously, or subsequently. It is of the essence of the contract that there be a subsisting valid obligation of a principal debtor. Without a principal, there can be no surety. 21 R. C. L. 946.

From the foregoing, we must conclude that the answer of the defendant failed to state a defense to the plaintiff's cause of action and that the trial court erred in overruling the plaintiff's demurrer thereto. We deem it unnecessary to discuss the other assignments of error relative to the procedure in the trial of said cause.

The judgment of the trial court is reversed, and the cause is remanded, with direc-

tions to vacate said judgment and sustain plaintiff's demurrer to the defendant's answer.

BRANSON, C. J., and HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 8 C. J. p. 214, §348. (2) 8 C. J. p. 254, §401; anno. 28 L. R. A. (N. S.) 501; 1 A. L. R. pp. 703, 704; 3 R. C. L. p. 442; 1 R. C. L. Supp. p. 828; 4 R. C. L. Supp. p. 186. (3) 22 C. J. p. 1089, §1443. (4) 8 C. J. p. 722, §1007; anno. 26 L. R. A. (N. S.) 993; 34 L. R. A. (N. S.) 105: 3 R. C. L. 963.